for so much as was not covered by such prior assurance; and would be bound, in that event, to return the premium, retaining only one half per cent.; but if such prior insurance should be made in England, the same consequence was to follow; but they were in that case to retain one per cent. If an insurance were effected in England, or elsewhere, subsequent in date to this policy; such insurance was not to affect these defendants, who would nevertheless be bound in case of loss, to pay the sum insured; and in case of safe·arrival, to retain the premium. So far as the priority of date of the two policies, could be important; the subject was fully and clearly provided for, by the printed and written stipulations in the body of the policy. The introduction of the written stipulation did not dispense with any one of the printed provisions, which constitute the standing form of the·policies of this company; neither did they embrace the same subject, intended to be expressed by this. The former is confined to a prior insurance in England; the latter extends to a prior insurance in any part of the world. By the former, the defendants were to retain one per cent. By the latter, only half as much.

We are then to consider, whether the order for insurance can be resorted to, for the purpose of giving a construction to this policy. Now, I take the rule to be, that if by mistake, a deed be drawn, plainly different from the agreement of the parties, a court of equity will grant relief, by considering the deed, as if it had conformed to the agreement. If the deed be ambiguously expressed, so that it is difficult to give it a construction; the agreement may be referred to, in order to explain such ambiguity. But, if the deed be so expressed, that a reasonable construction may be given to it, and when so given, it does not plainly appear to be at variance with the agreement of the parties, the latter is not to be regarded in the construction of the former.

Now, in this case, the policy, upon·the face of it, can admit of but one construction, and the ambiguity arises out of the letter of the 12th of May, and the order for insurance, to which we are referred by the defendants, for an explanation of the policy. Can any person doubt of this, who has attended to the ingenious and learned criticisms of these papers, by the counsel on each side. After it has been so clearly proved, that the important word "is," may be construed past, present, or to come, and that even "shall be," may be taken in the past or future tense; where is the standard of certainty to which we are referred, or why leave the plain road in which the policy places us, to wander in the perplexed mazes of the letter and order? If in these we attempt to seek the intention of the parties, the counsel, who have endeavoured to enlighten the court, have demonstrated, that the pursuit must terminate in doubts. On one side, strong arguments are urged, to prove that the parties intended to make void the American policy, in the event of the plaintiff's having effected his insurance in England, without reference to the time when it was done; and the other has been little less successful, in proving that the American policy was to be preferred, if a prior insurance was not effected in England. If, upon this subject, I were compelled to give an opinion, which I should be, were the expressions of the order inverted in the policy, I should, I confess, rather incline to adopt the construction of the defendants' counsel. But since the policy admits of a satisfactory construction, and it is this paper alone which produces the ambiguity, the former must be considered as the only safe evidence of the intention of the parties; particularly after the loss has happened. Judgment for plaintiff.

[A bill in equity was then filed by the insurance company, which stated no new matter, except that defendant intended to insure according to the order, and called upon him to declare if that was not his intention. This the defendant denied. The bill was dismissed by Mr. Justice Washington for want of equity. Case No. 3,765.]

HOGAN (DELAWARE INS. CO. v.). See Case No. 3,765.

## Case No. 6,583.

### HOGAN v. INGLE.

[2 Cranch, C. C. 352.][1]

Circuit Court, District of Columbia. Oct. Term, 1822.

DISTRESS FOR TAXES—STATUTE OF LIMITATIONS.

Distress for taxes due to the corporation of Washington, is not barred by the statute of limitations.

Replevin for goods taken by the defendant as a distress for taxes due to the corporation of Washington for the years 1812, 1813, 1814, 1817, and 1818, amounting to $55.53. The distress was laid November 3d, 1820. The plaintiff tendered $19.37, the amount of taxes due for the years 1817 and 1818, and on the 7th of November, 1820, replevied the goods, having first obtained an order or warrant therefor in these words: "To the clerk of the circuit court of the District of Columbia, for the county of Washington: Whereas, Thady Hogan, of the county aforesaid, bricklayer, has satisfied me, the undersigned justice of the peace for the county aforesaid, that it is necessary for the purposes of justice that a replevin should issue in the name of the said Thady Hogan, as plaintiff, against Joseph Ingle, collector of taxes, due the corporation of Washington, in the second ward,

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

for the following personal property taken in execution by the said collector for arrearages of taxes due to the said corporation; that is to say, one mahogany bureau, &c. Now, therefore, you are by these presents empowered and directed forthwith to issue a writ of replevin for the goods and chattels taken as aforesaid; provided, however, that the said plaintiff shall lodge with you, before the issuing of such writ, the sum of $19.37, which appears to be the sum really due from him for taxes; and for so doing, this shall be your sufficient warrant. Given under my hand and seal, this 4th day of November, 1820. Joseph Forrest. (L. S.)" The Maryland act of 1785 (chapter 34) enacts, "that in every case of money or other thing, due the public, for satisfaction of which there shall be any distress or execution of property by any officer or person authorized by law so to do, no writ of replevin shall issue, or be maintainable in law." By the act of 1786 (chapter 12) on a distress, the party may complain to the commissioners of the tax, who may hear and adjust such complaint, and suspend the sale of the property. By the act of 1790 (chapter 53), where personal property shall be taken in execution for public taxes by collectors of arrearages, the party may obtain a writ of replevin by satisfying a justice of the peace that it is necessary for purposes of justice that a replevin should issue, who will thereupon issue his warrant to the clerk, &c. Under these acts, the warrant in the present case was granted, and the writ of replevin issued. The defendant justified the taking of the goods as a distress for the taxes of which he was collector. The plaintiff relied on the plea of limitations, and at the trial of this cause at the last term, THE COURT (THRUSTON, Circuit Judge, contra) was of opinion, that the statute of limitations was a bar. The verdict being for the plaintiff, the defendant moved the court for a new trial, upon the ground of misdirection of the jury upon that point, which motion now came on to be argued.

Mr. Key, for defendant. The question is, can the plaintiff in replevin reply the statute of limitations to an avowry for taxes due to the corporation of Washington. The Maryland statute of 1715 (chapter 23) limits "all actions of debt for lending, or contract without specialty, and all actions of debt for arrearages of rent," but says nothing of distress, nor of any other kind of debt. It speaks only of actions. A distress is not an action. It is execution. The statute of limitations is in derogation of the common law, and must be construed strictly. An action of debt for escape is not within the statute; nor an action of debt on the 2 Eliz. 6, for not setting out tithes; nor for arrearages of rent, reserved on a lease by indenture; nor for money levied on a fieri facias; nor on a tally; nor on an award; nor any uncommon action of debt, or of detinue. Bac. Abr. tit. "Limitation," D; Jones v. Pope, 1 Saund. 37.

No case has been found, in which it has been decided that a distress for rent was within the statute, although an action of debt for rent is.

Mr. Jones, contra. If the remedy be extinguished, the legal right is extinguished, although the moral obligation may remain. A debt is as much discharged by the statute of limitations, as by a discharge under a bankrupt law. Trueman v. Fenton, Cowp. 548; Hawkes v. Saunders, Id. 290; Barnes v. Hedley, 2 Taunt. 184; Hardy v. Cathcart, 5 Taunt. 14, 16. "Any construction of the statute to make it bar one form of suing, while others are open, was nugatory and contrary to its true intent." "The law, from the nature of it, ought to be taken liberally in favor of defendants." "The limitation of suits is founded in public convenience, and attended with so much utility, that courts of equity adopt this statute as a positive rule, and apply it by parity of reason, to cases not within it." Per Lord Mansfield, in the case of Johnson v. Smith, 2 Burrows, 961. There is a great difference between the English and the Maryland statute of limitations. The English statute enumerates the forms of action technically. The Maryland statute uses words of general and common import. It refers to the cause of action, rather than to the form of action. It speaks of actions founded on book-debt, and on account. It includes all actions of debt not founded on specialty. Thus, an action of debt qui tam is within the statute. There are many cases within the reason of the statute, though not within the letter, and where the party may avail himself of it, with or without special plea. It is said that a distress is an execution, not an action, and therefore not within the statute. But an avowant is an actor. His avowry is the declaration in an action commenced by the distress. The plaintiff pleads to it, an issue is joined, and the cause proceeds to trial and judgment. The statute is a bar to all actions upon contract, and all actions of debt not on specialty. If an action of debt had been brought for these taxes, it would have been within the statute; and if one remedy is barred, all remedies for the same cause of action are barred also. Under the charter of the Bank of Columbia, the first process is an execution, and the goods may be sold before the defendant can have any remedy. On the return of the execution, he may have an issue tried, whether the debt be due, and may plead the statute of limitations in the same manner as if the bank had brought suit in common form. So the statute is a bar to a libel for seamen's wages, as if the suit were at common law; and so in all cases when the courts of admiralty and courts of common law have concurrent jurisdiction. Ball. Lim. 94; Hyde v. Partridge, 3 Salk. 228. The taxes due to the corporation of Washington, are only debts, and are not entitled to greater privileges than debts due to banks and other cor-

porations, or even to individuals. They are called "taxes," but they are not taxes due to the sovereign authority of the country. They are entitled to no prerogative protection, no priority of payment, and no extraordinary mode of collection. They do not form an exception to the general principle, that if the right be barred in one form of action, it cannot be recovered in another. No presumption of purity in the corporation can give any sanctity to its claims. They are as much within the spirit of the law, as the claims of individuals. But it is said that this is a debt due by statute, and therefore not within the limitation, like the action of debt for an escape. But there were other reasons for that decision. The cause of action for escape arises ex maleficio, and was therefore not one of the forms of action barred by the statute. It was not an action of debt upon the statute, although the statute gave the remedy. So the remedy upon a promissory note is given by the statute of Anne, yet the action is not upon the statute. So the action for use and occupation is given by a statute, but is barred by the limitation. So the charter of Washington gives the corporation power to lay and collect taxes, (among many other powers,) and to contract, and to become creditor and debtor, but that does not exempt all their contracts from the act of limitation.

Mr. Key, in explanation. The tax is imposed by a by-law, which, being authorized by the charter, is equivalent to a specialty of the highest nature.

Mr. Jones, in continuation. The obligation to pay the tax arises from the joint act of the corporation and the party. He makes himself debtor by purchasing or holding property in the city. It is a contract. A corporation aggregate is only a collection of individuals, and has no other privileges than those expressly given by its charter.

Mr. Swann, in reply. This is a claim for taxes due to a corporation empowered by congress to lay and collect them. It is a debt, not by simple contract, but by record or by specialty, or by an act in the nature of a specialty, and therefore is not within the statute of limitations. It is like the case of taxes in Maryland. By the common law, replevin does not lie for distress for taxes. To lay and collect taxes is a sovereign prerogative; and so far as that power is delegated to the corporation of Washington, it is a sovereign, and is entitled to the benefit of the maxim, nullum tempus occurrit regi. When congress delegated this power to the corporation, it meant to give with it all the collateral powers and rights belonging to a state in relation to taxes. The plaintiff has considered these taxes as public dues, or he would not have applied to a justice of the peace for a warrant to the clerk to issue the replevin, under the act of 1790 (chapter 53). The statute of limitations is to be construed

strictly as to the classes of actions to be barred, but liberally as to the individual cases in the several classes. If distress for taxes be within the statute, what is the period of limitation? One, two, or three years, or any other time? The remedy is expressly given by act of congress, and if it be an action, it is an action upon the statute. No case can be found of a plea of limitation to an avowry for rent. Distress and sale is an execution. No day is given to plead the act of limitations.

THE COURT (nem. con.) granted a new trial without costs, being of opinion that the statute of limitations was not a bar to distress for taxes due to the corporation of Washington.

---

## Case No. 6,584.

### HOGAN et al. v. MANSELLY.

[1 Betts, C. C. MS. 59.]

Circuit Court, S. D. New York. Dec. 15, 1842.

MARINE INSURANCE—BOTTOMRY BOND—SALVED FREIGHT.

[Insurers, having satisfied a bottomry claim where the vessel is lost, are entitled to the salved freight, as against a subsequent assignee of the master and owner, who advanced money on the freight for the benefit of the ship and cargo.]

The defendant, Manselly, was the holder of a bottomry bond executed to him at Antwerp by Trott, master and owner of the brig Harriet, on a voyage from Antwerp to New Castle and to the United States. The vessel, having deviated, and earned freight on the deviated voyage, was lost before arriving in the United States, a portion of her freight having been saved and remitted to New York. Robertson was mortgagee of the vessel, and was entitled to her earnings on the voyage. Trott and Robertson assigned the salved freight to the complainants [Hogan and Milne] to cover a draft made by the master on them at Cadiz for benefit of the ship and cargo. On a libel filed by the defendant in the district court, it was adjudged that the salved freight belonged to the bottomry creditor. This decree was affirmed, on appeal, in the circuit court. The bottomry bond was made at the request of Trott, the master, and the defendant applied funds belonging to the proceeds of the outward voyage, and coming to his hands after the execution of the bond, in payment of the premium, and indorsed the balance on the bond. Upon these facts, the bill seeks to have the freight fund aforesaid appropriated to the complainants, or, if the bottomry creditor has not received satisfaction of his debt from the insurers, that the plaintiffs may be subrogated to his rights and interests in the policy for the balance of the debt, after applying the above freight